you morning good afternoon your honor may it please the court my name is Tom Beamer and I represent SEPTA I would like to reserve three minutes of my time for rebuttal time the issue on this appeal is whether SEPTA status as a Commonwealth entity entitled to state law sovereign immunity is preempted by Amtrak's Reform Act the short answer to that question is no I think it's helpful to break the issue down into three sub issues in order to understand why the answer is no the first sub issue is whether SEPTA has sovereign immunity for an indemnity claim claiming tort liability where SEPTA would have the federal statute as opposed to the state statute right that's correct your honor there's no question that 11th Amendment immunity is not entailed in this particular appeal what we're dealing with here is state law sovereign immunity for a contract claim under state law and the first issue that the court has to address is whether SEPTA has sovereign immunity for a contract claim where the underlying tort itself it would have immunity for you know I don't like to sound like a buddy-buddy but yes I am but you know I always thought the world be a better place if people did what they said they were going to do so what you say is SEPTA can enter into a sovereign to a and then when you seek to enforce the obligation say you can't enforce it I mean that I mean it really doesn't smell right I mean I hate to tell you that that they would do this then they would say no you can't sue us we're not gonna we're not gonna do what we said we're gonna do but you can't sue us and the fact that we didn't know we couldn't maybe they didn't know did they know they couldn't enter into this agreement your honor there's nothing in the record as to what they knew in 1982 about whether they could or they could not enter into the agreement but what we do know surely they did know about that your honor but what we do know is that this policy is the policy not of SEPTA but of the Commonwealth of Pennsylvania and that the Commonwealth of Pennsylvania in one PA 2310 says explicitly that only the General why did SEPTA and Amtrak enter into the contract why no why I understand why Amtrak did but why didn't SEPTA say well we can't make this agreement because we can't waive our sovereign immunity well your honor I think there are two ways of looking at that particular question one is the law at the time you enter into a contract becomes part of the contract Amtrak should have been aware that SEPTA was subject to state law sovereign immunity so at the time no matter what you guys said they should have known we can't believe what they're telling us your honor I had the pitch I understand that it's not a particularly attractive intellectual argument to say at the end of the day that despite the fact that SEPTA entered into this contract that Amtrak can't enforce it but that is not SEPTA saying it it is the Commonwealth of Pennsylvania saying it that is the Sovereign's policy on this issue this has come up over and over and over again in cases involving sovereign entities in Pennsylvania you were talking about the contract issue and I'm interested to know what's the I hear the folks from Amtrak saying this is a contract like any other contract it's true that underlying it there are issues that there's money that is associated with tort liability but but that's not what the case is about it's not about the obligation and the sovereign immunity statutes just don't speak to that your honor what's wrong with that reason it's an incorrect syllogism that Amtrak is using what Amtrak is saying is that SEPTA was given the power in its enabling act to enter into contracts that this particular dispute is an indemnity agreement it is a contract therefore SEPTA has the power to waive its sovereign immunity by contract well they wouldn't say they wouldn't say to waive their sovereign immunity by contract what they would say is they can they can do what they want they can indemnify they can contribute they can agree to whatever suits their fancy as long as they're agreeing to it in a contractual format and not paying out a tort judgment itself that's the pitch I take it that they're making your honor that that is precisely incorrect as a Pennsylvania has said in numerous cases going back to the city of Philadelphia versus Greg that you cannot directly or indirectly waive the immunity that you were given by the General Assembly without a specific explicit waiver and so these attempts to do these syllogisms that Amtrak's engaged in has been rejected it's been rejected as to SEPTA itself it's been rejected as to SEPTA itself with an indemnity agreement involving Amtrak for 30th Street Station that's the Applebaum case it's been rejected in the Warwick case which is a Pennsylvania Commonwealth Court decision okay well assume that that then is in fact the state of the law and that's how it squares up how how can that policy of the state of Pennsylvania ironclad as it is according to you stand in the face of congressional statement that Amtrak gets to into enter into liability contracts because if Amtrak isn't able to spread the risk through that kind of risk-sharing then we have a national problem on our hands your honor there are two reasons why that Amtrak's Reform Act doesn't trump SEPTA sovereign immunity in this particular case the first reason has to do with the scope of preemption that's involved here we're talking about conflict preemption here and we're talking about a statute that was enacted in 1997 that gives Amtrak the ability this it says may enter into contracts that allocate financial liability that's the particular session we're talking right there's no express preemption there's no field preemption so in order to make the determination as to whether or not that Trump SEPTA sovereign immunity we have to look at what does Congress intend under these specific specific circumstances to Trump it right and they've cited they've cited Senate and House reports at the great length where you know whether you're a fan of legislative history or not it sure seems mighty clear that the United States Congress was saying we do not want states exercising sovereign immunity to say don't indemnify we want Amtrak to be able to get indemnification would you disagree that that's the tenor of those Senate and House reports yes I would your honor I believe that the tenor of the Senate and House reports is not dealing with sovereign immunity it was dealing with a specific problem indemnification it was dealing with indemnification because Amtrak had entered into a series of 25-year agreements that were designed to allocate responsibility for the tracks all of those agreements were coming up in 1996 and what had happened was there was a specific case out of the District of Columbia in which the court held that a con that a contract requiring indemnification was invalid or void for public policy when it indemnified for your own gross negligence and the end of Congress in the House and the Senate report make absolutely clear that the happen when we have to renegotiate those access agreements if we don't really have protection aren't we going to have to charge more money even though isn't there an a for sure argument to be made there then because if Congress was so set on not allowing the states through their assertion of public policy to keep Amtrak from getting indemnified even in the face of gross negligence why would they have said what they said in this statute if what they were going to really mean is you know but for ordinary negligence you states have Adam you can't you they can't get indemnification your honor the problems want to scope and here we're dealing with two agreements that were entered into in 1982 and 1987 and the question is that Congress intended Amtrak's reform legislation in 1997 to affect pre-existing contract rights pre-existing contract rights when we're dealing with a problem that's designed to solve a particular issue of renegotiating access agreement was it isn't mean accident here it takes place many years after the the Amtrak act right it does so I suppose one could argue that if the state of Pennsylvania understood or should have understood the character of the Amtrak act and if it if it really didn't want to face the consequences of that it could have adjusted its contractual arrangements at that point your honor the two problems with that one under the under the law on whether or not and a particular act of Congress can be this court has specifically rejected the reliance argument that Amtrak makes in the Papinella decision they say that there's a strong presumption against applying legislation retroactively and in that case judge Becker at the time said it would be a it would be an odd presumption if we were going to require the party who's relying on the fact that it's not being applied retroactively to show that they relied on the app so when you say applied retroactively what you're saying is we SEPTA obligated ourselves to indemnify in the 80s and then the Amtrak Act comes in in 97 and it says those contracts are good and then in 2004 there's an accident and that somehow in that line there's a that's not precisely what I'm saying to get the timeline precisely right as to what I'm saying is that in 1982 and in 1987 when SEPTA and Amtrak entered into these agreements one of two things happened either the law at the time of contracting became part of the contract and in that respect then SEPTA's obligation to indemnify is modified by its sovereign immunity when Amtrak's legislation is passed in 1997 that changes that contract that is a retroactive effect or you can look at it the way the 11th Circuit did in the CGX case that we cite in our papers and you can say that at the time Amtrak and SEPTA entered into the indemnity agreements in 82 and 87 because Pennsylvania state law did not give SEPTA the authority to waive its and it cannot bind SEPTA so when the Reform Act takes place what it does is it takes a situation where SEPTA didn't have liability under the indemnity agreement before the Reform Act and after the Reform Act it did that is a classic retroactive effect why isn't the relevant event the vesting of DeWeese's claim because your honor the relevant event here is all based on the contract of indemnification itself without the contract for indemnification SEPTA would have no liability for this tort it has been stipulated on in the record on a 168 that this tort liability SEPTA would have no liability for because it has sovereign immunity what's what is there you cite the distinction between section a and section B why don't you spend a your honor again we're talking about conflict preemption here and there are a number of important presumptions that this court and the Supreme Court have recognized with respect to conflict preemption and the court doesn't lightly imply that we're going to preempt state law one of those presumptions is based on whether or not there's an express preemption provision in the act itself in 28 103 a the provision right before 28 103 B there is an express preemption provision of punitive damages and what that shows is that when Congress wanted to expressly preempt something in this area with this act it knew precisely how to but it doesn't necessarily mean that just because they didn't use that word and for non punitive damages that they weren't preempting as well it doesn't necessarily mean it I agree your honor but it does enhance the presumption okay good thank you we'll have you back thank you mr. being mr. Berlin morning appreciate you being patient that's been a long morning for the court I'll start with making a few points because I think the courts already made a number of points on the on the preemption issue first on the a and the B sections the very clear that the fact there is that there is an express preemption does not in any way dilute the obligation of this court to look and say okay there isn't an express preemption in B now we have to determine whether there is implied preemption because this is a sufficient obstacle the congressional objectives we have to examine the statute as a whole we have to look at the purposes and the counsel makes an argument if I understood it that in effect without going into the question of whether or not there was conflict preemption here that the time sequence here of when the agreement was written which was before the preemption statute right in effect would be in effect what he's saying is you maybe there is a conflict preemption but because of the time sequence here you don't even have to reach the issue as far as this case is right sir how about that I'm very comfortable with that because this court has made very clear that you have to look at what the important event is and there can be no question but that agreement sitting out there in 1982 that agreement sitting out there in 1987 is of no consequence to anyone until such time as an accident takes place in 2004 Amtrak pulls out its contract Amtrak says oh the good news is we've got intended Amtrak goes into court and asserts the cut of the cross claim and then that is the first time that the issue comes up because it is only comes up when it is time for them to assert a defense to liability that's what the sovereign immunity is it is a defense to liability it's very interesting defense was always there no it's not there until there's something to defend against well I mean it was in Kohate maybe but the defense existed but what wasn't always there was the preemption right no oh listen there's no question that that this court has said on multiple occasions sometimes you're going to have events that predate the statute that doesn't decide retro activity by itself you still have to look at the important events and what we're saying is the real question is when does somebody have to go to the contractor to determine whether it's enforceable first time is 2004 indeed they could have drawn a contract that said back in 1982 by the way our indemnity is subject to sovereign immunity and we don't even care if they change the sovereign that'd be a different story that's not what they did I once wrote an opinion like that on guaranteeing bonds and the bond said yeah they're guaranteed but you have to understand it's subject to the act of the legislature which might not enact it and I wondered if anyone would buy them guess what they did I mean so I mean I looked at I thought this is something you know and they were sold well this is part of what what troubles Amtrak really in these transactions it's no big deal if you actually think that you have sovereign immunity and I frankly question whether except to have any idea about sovereign back in 82 or even I mean that it was applicable to the full power to contract I don't doubt that for a minute because I because if we thought otherwise we'd be saying they acted in bad faith no question but they must have known about sovereign and that's really what I meant that it wasn't an issue that it wasn't a problem and if it was a problem they could have brought it up and even if it wasn't a problem but they wanted to refine their indemnity obligations they could have added as something that was engrafted on saying you know what we'll identify but we're not going to indemnify for any more than we would if this was a tort case subject to the limitations of the sovereign do you disagree with your opponent's assertion that Pennsylvania law forbids doing indirectly what you can't do directly and therefore this claim that you're making that oh this is all about freedom to contract and I tort liability is it's just a mirage you're just Pennsylvania a lot doesn't allow that kind of a as he I'm as he would I don't want to put words in his mouth but you just you can't you can't backdoor this we heatedly disagree it's septa does not have authority under their stature contractually 1741 to do exactly what they did okay well they say leaving aside the heat why don't you speak to their he says we've got case after case after case that says you can't do indirectly okay do I'll take every one of them on let's start with war because they came on in their reply recently said oh you lose because of a war a case I invite the court to look at the war a case and specifically footnote eight war a case is notably different because the court says here they are claiming now before us this is a contract case but guess what this is a tort case that somebody's trying to dress up as a contract case and interestingly enough if we go and look at the pleadings in war we don't even see the word contract anywhere it was an injury to children who got off a bus and it was a plain tort case and then somebody got smart I think on appeal probably because they didn't put it into their pleadings and they said oh I got a bus it's a contract case that's military department Warwick said we're not buying it and you know what the case law consistently says we don't buy it when you take a tort case and you try to recast it as a contract case that's not what we're talking about here they saw it cite the gray case very interesting you should look at the great the gray case that is the only Supreme Court law which stands for the proposition that you can't waive by contract sovereign the great case involves an explicit local permission by the way it's not septa and you know that what you have to do is you have to look at the septal legislation not the separate legislation of these other entities of the subject of the other cases but if you look at the great case what the local city Philadelphia did was pass an ordinance that didn't say you can have indemnification didn't say that didn't say you have a right to contract what it said was you know what we're not going to assert sovereign immunity from tort in certain kinds of cases involving our offices and the Supreme Court of Pennsylvania said wait that's just flatly by contract undoing the sovereign yeah but since then that case has been picked up there's a law for the court of common pleas case that was affirmed without opinion recently but you know involving septa and that's the first septa case Applebaum I don't doubt those cases expressly cover our situation but it's all misguided it all flows from this great case that was decided is easily distinguishable and then it cases which don't have anything to do with septas authority under 1741 very broad they say they have the right to contract we say congratulations you exercised your right to contract you exercise it effectively consistent with your powers you gave me indemnity I don't want tort damages I want my rights under the contract you agreed to so I think none of those cases get that get them home remotely and I'd be happy if the court would look at that call me out I think I've addressed the the sovereign immunity the retroactivity I think I've actually also covered the sovereign immunity issues forgive me sifting through my cases let me briefly touch on collateral stop first we've argued that they should be deemed to waive the issue of collateral stop up as they didn't raise it in their opening brief it's interesting because they put in their reply oh you've got a change of course we're surprised we didn't expect you to do collateral stop all we have to do is look at the papers in the district court we initially did not argue the collateral estoppel issue we then came in with a supplement of my memo which the judge allowed us to submit and flatly attacked the issue I expected that they'd raise it I mean that a fairly short opening brief I expected they address the sovereign immunity head on the collateral estoppel headlong head on it didn't address either of them I'd like to say they waive the sovereign immunity argument but when those words come out of my mouth I know I can't make that argument but I would suggest to the court that they did waive any complaint about collateral estoppel whether or not they did I would briefly say this is a very important issue very important to contract to answer frankly it's very important to say it's very important to Congress it is clear in the Applebaum case that Amtrak did not have its lawyers arguing the sovereign immunity case at the time nobody thought about it we had an ability to hand the case over to tender it to somebody else somebody else took it somebody arranged the single argument is that is that a defense to collateral estoppel claim that I think you're kind of asleep at the switch please don't hold us no I'm actually it can your honor well knows collateral estoppel boils down to lots of equitable considerations and I think sort of a fair administration of justice issue all we are saying is that if Amtrak's counsel were there we're asleep switch probably still be sure making the same argument but it wouldn't be nearly as effective and you can look at the restatement comments actually I think it supports the proposition as a circumstance where you've got a relatively small case turns out you don't have to defend yourself somebody else is going to pay for it you hand over the defense you don't pay a lot of attention guess what you probably pay no attention and then the decision comes down turns out in retrospect it's extremely important it's important to both parties it's important to Congress you have the flexibility under the restatement section 28 which the sport is embraced to look to in deciding collateral stoplation you have the ability to say we're not you know when I when I read this case I thought you know this can't be an unusual situation because I think all over the country there are state-originated entities like EPTA SEPTA that probably have tracks and enter into agreements like this kind but I must say I have to congratulate you on your use of the word there and sleep with the switch I thought it was particularly good in this case you've reminded me of one of the small thing that I'd like to touch on is it it bears on exactly what you said we know the reform act recognized not only Amtrak's emergency emergency needs but the importance of the Northeast Carter the Northeast Carter involves track owned by Amtrak the legislative history focuses on lots of the problems they had with freight railroads guess what that's not the Northeast Carter it's the rest of the United States where Amtrak doesn't own the track and had to engage in these agreements with the owner of the track the freight railroads in the Northeast Carter guess who the agreements are with they are with the SEPTA's the New Jersey transits the Massachusetts transits the Maryland transits the truth is this case has implications well beyond the relationship between Amtrak and SEPTA because we have series of these kinds of agreements with quasi public entities like SEPTA up and down the East Sea Board and I do believe that we can assume that Congress is well aware of that fact when they pass this very broad legislation with a very broad congressional purpose that is stated in both the Senate reports and the House reports I have only a minute left I hate giving up time but if the court doesn't have any further questions I'll rest on our paper. Thank you very much Mr. Boulayne. Mr. Beamer. I just want to focus on one issue that I think answers both questions that the court has been struggling with here this morning. I don't think we've been struggling that much. Maybe I've been struggling your honor and and that is the issue with whether SEPTA has the authority to waive by contract its immunity. Pennsylvania law is clear it does not have that authority. There is an act 1 PACS 2310 that says it has to be explicit from the General Assembly. If the General Assembly gives SEPTA immunity from tort liability which is what we have here tort liability that SEPTA would be immune from. SEPTA cannot take that liability on itself it does not have the authority. And so how do we characterize those initial those two contracts in 82 and 87? I think there are two ways you can look at it your honor and courts have done it both ways. One is to say that the law at the time that you entered into the contract become part of the contract and therefore modify the indemnity agreement accordingly. You mean you mean abrogates? It would modify your honor the Treybold decision which is the recent decision from the Court of Common Pleas affirmed by the Superior Court as said in that case this issue came up they said we're not saying SEPTA doesn't have any liability at all under the indemnity agreement but the liability is limited by its status as with respect to sovereign immunity. I'm now puzzled because I don't understand how you can say this is a modification on an abrogation. This is your argument in your briefing and forcefully here today has been this is an indemnity this indemnification is nothing more than a surrender of sovereign immunity which cannot be done period. Now if the opposite of that is oh it could be done how is which is what SEPTA said when it walked into a negotiating room and contracted with Amtrak below these 27 years ago if if they say we can do this and you say the law says you can't do this how is there any room left in there to say well we could identify maybe something but nothing you're interested in what isn't it just a flat-out abrogation? No your honor maybe I'm not being clear SEPTA SEPTA has sovereign immunity from the General Assembly then you can enforce the indemnity agreement. SEPTA's damages are capped so even if you could say that it was a within the vehicle exception for example you would only be able to go within the cap so what it does is the indemnity agreement is not completely abrogated. It's   modified to say that those things that SEPTA can't take on by contract it still can't take on but anything that's with it that's not within that realm they can have indemnity for and my last point is that I think the reason the reason that this has a retroactive effect is because prior to the Reform Act prior to the Reform Act if I'm right about Pennsylvania law SEPTA had no liability for this tort that Amtrak's bringing the claim for. After the Reform Act if preemption applies SEPTA does. That is the kind of before and after common-sense approach that the Supreme Court says this court's supposed to use. That has nothing to do with the contract though does it? I mean your your assertion of sovereign immunity stands independent of the contract you never you know whether you had contract with Amtrak or not you would and according to your argument here today always would indeed be bound to say we have sovereign immunity period regardless of whether there was a contract. So if that's the case what why should we be paying attention to the contract except to say accepting so far as it becomes implicated by the accident that Mr. Dewey said. I don't think that's correct your honor I think that what I'm saying is that SEPTA had sovereign immunity prior to their argument that the Amtrak Reform Act preempted SEPTA sovereign immunity because this is state law sovereign immunity. So if Amtrak it's correct that SEPTA's sovereign immunity is preempted then before it had no liability after it did. You answered part of my question how would you the contracting for indemnification with Amtrak at a time they must have they must have known that what they were doing was outside of their authority at that time. Your honor I suspect they didn't know and I suspect that Pennsylvania public policy is such because they don't want employees of I don't when did the the state dealt with sovereign immunity in the 70s am I correct? Correct your honor during initial SEPTA's enabling act it had sovereign immunity from the beginning. It was amended at some point in the 70s to make clear it's been amended several times but SEPTA's always had sovereign immunity. But the Commonwealth first took up the sovereign immunity issue generally in the 70s I think. Am I right about that? With respect to SEPTA your honor? With respect to everything and then SEPTA. It was a period of time when there was a waiver and then it was brought back in by the General Assembly and I believe it was in the 70s your honor. That's the same as New Jersey. Same thing happened in the 70s. It's very similar that these these requirements that a lower employee or a city can't waive by accident immunity that they get from the General Assembly. No but presumably these are lawyers who are making these decisions the time they entered into these contracts. Presumably but they still don't have the authority to do it your honor under Pennsylvania law. Mr. Beamer thank you very much. Thank you. The case was well argued we will take the matter under advisement.